## Carmichael *et al.*, Appellants, *v.* Browder.

The constitution gives the probate court exclusive jurisdiction, in all matters, specifically set forth in the article from which it derives its powers.

It seems, however, if the court of probate be wholly incompetent to give relief, and the party has not, by his own *laches*, lost his remedy, it might be a proper case for the jurisdiction of a court of equity.

If profits, in the possession of an administrator *de bonis non*, be assets, he may be compelled to account for them by the probate court; if not assets, the remedy is at law.

Where distribution is claimed, a bond to refund must be tendered, before a breach of the administration bond can be charged upon the administrator.

It seems, that the powers of the probate court, in matters committed to its jurisdiction, are coextensive with those of a court of equity.

Where a co-heir claimed, in his bill, partition of real estate, and a distributive share of the personal estate of his ancestor, in possession of the administrator of the estate: *Held*, that the bill was bad for multifariousness, as demanding several matters of distinct natures.

APPEAL from the court of chancery.

This was a bill filed in the court of chancery, by complainant, an infant, daughter of Mrs. Browder, formerly Mrs. Hooke, against James F. Carmichael, administrator *de bonis non* of the estate of Mrs. Browder, and the children of Mrs. Browder, by her first husband, praying a general settlement, and distribution of the estate, real and personal of Mrs. Browder. Carmichael was also guardian of the minor children of Mrs. Browder, by her first husband, and was proceeded against as such in the bill.

Winchester, for the appellants, contended, that the bill should be dismissed, upon the demurrer to the relief:

1. Because of its multifariousness.

A bill cannot be filed for distribution of personal estate, and partition of real estate. Mitford's Ch. Pl. N. Y. Ed. 1833, p. 141, and note 1; Case of Dunn *v.* Dunn.

2. For the improper joinder of defendants.

[Carmichael *et al.,* Appellants, *v.* Browder.]

3. Because the chancery court has no jurisdiction to interfere with the probate court, in settling the final account of the administrator *de bonis non,* and decreeing distribution of personal estate, while the same is in the course of administration in the probate court.   See decision of this court, January Term, 1838.

Henderson and Boyd, in reply, contended,

That Carmichael could not question the jurisdiction of the court, either on the ground of the subject matter of the bill, or of the person of Carmichael as a party.

1. As to the subject matter.   It is cognisable in the court of chancery, because it is at the suit of an infant.   1 Mad. Chan. 330–1.   Infants may have a bill for possession of their estate, or account of rents and profits.   1 Mad. 91.   All persons entering upon infants' estates are chargeable, as bailiffs or guardians.   1 Mad. 91; 5 Johns. Chan. Rep. 3.

"A separate court of chancery shall be established, with *full jurisdiction in all matters of equity.*"   Rev. Const. pp. 14 and 15; also, Act of 1833, p. 36.

Is there, then, any jurisdiction, which ever appropriately belonged to a court of equity, that our chancery court does not possess?

2. The court has an equally clear jurisdiction over the person of Carmichael, as a party defendant.

1. Because, as administrator, he is bound to distribute to the heirs.

2. Because, as possessor of the lands and slaves of complainant, an infant, under whatever claim or pretext, he is responsible in equity as a trustee.

3. Because, charged with receiving money, in amount unknown to complainant, he is bound to account in chancery.

4. Being the actual occupant of the freehold, in which complainant claims interest and partition, he is properly a party on the partition of the estate.   See Rev. Code, p. 61, sect. 112, p. 71, sect. 2, p. 58, sect. 102, p. 55, sect. 91, p. 232.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

As a preliminary question in this case, our attention is directed

[Carmichael *et al.*, Appellants, *v.* Browder.]

to the respective jurisdictions of the probate and chancery courts. If the matters in the bill ·were cognisable by the probate court, then it is contended, that the remedy should have been pursued in that court, and that the court of chancery had not jurisdiction. The same question has been adjudicated by this court, but the decisions are called in question by counsel, as unwarranted by the constitution and laws. We shall always be ready to abandon pre-conceived opinions when convinced that we are in error; but in this instance, we see no reason for adopting a rule different from that already decided to be the true one. The decisions do not go as far as they seem to be understood to go by counsel. The broad proposition that an administrator could not, for any purposes, resort to a court of equity, or that he could not, in that capacity, be there proceeded against for any contingency, was never intended to be asserted, nor do the opinions warrant any such conclusion.

That the jurisdictions of the two courts are not concurrent, but separate and distinct, and even exclusive in the true meaning of the term, we apprehend there can be no doubt. How is jurisdiction given to our courts? I answer, by the constitution. Do they possess any other jurisdiction than such as may be expressly given with the incidents or powers necessary to carry that jurisdiction into effect? I know of none other. The constitution says, that the chancery court shall have " full jurisdiction in all matters of equity," with a proviso, that the legislature may give to the circuit courts, equity jurisdiction in all cases when the amount in controversy does not exceed 500 dollars, and in cases of divorce and mortgages. Could the legislature give the circuit courts jurisdiction in other equity matters? It must be answered no, and the reason is, that such jurisdiction is already given by the constitution to the court of chancery. The proviso shows conclusively, that exclusive jurisdiction was intended to be given, else, why the necessity of such proviso. Whenever the legislature gives the jurisdiction mentioned in the proviso to the circuit courts, the jurisdictions to that extent will be concurrent. To ascertain the jurisdiction of the court of chancery, we must first look to the constitution; we there find, that it is full and complete in all matters of equity. The inquiry is then to be made, what

[Carmichael *et al.*, Appellants, *v.* Browder.]

are matters of equity? To ascertain this, we look to the powers exercised by other courts of equity, bearing in mind the restrictions which may be imposed, or which may necessarily arise under our own peculiar system, and whatever we find to be a matter of equity, is within the jurisdiction of the chancery court, unless expressly, or by necessary consequence, given to some other tribunal, and in that case it is not.

The constitution has also provided, that a court of probates shall be established in each county of this state, with jurisdiction in all matters testamentary and of administration, in orphans' business, and the allotment of dower; in cases of idiocy and lunacy, and of persons *non compos mentis.* This is not a limited jurisdiction, but it is general in all the subjects mentioned. Could the legislature give full power over these matters to any other tribunal? If not, the jurisdiction must be exclusive, and I imagine that it will be readily answered that it could not; because, the constitution has already distributed that power to a particular tribunal. No terms of restriction or limitation were necessary in the constitution, to confine the several subjects of jurisdiction to particular courts; by a familiar rule of construction, the express grant of them to one, necessarily excludes the jurisdiction of others. If our courts derive their jurisdiction from the constitution, of course there can be no concurrent jurisdictions, except by constitutional provision, or by some law not repugnant thereto, and it does not follow, that, because the court of chancery in England exercised a jurisdiction concurrent with the spiritual courts, in matters testamentary, that it may also exercise such authority here. Whatever is a matter testamentary, or of administration, falls under the cognisance of the court of probates. We do not mean to decide, however, that there are not cases arising in the course of administration, which may be proper for the interposition of a court of equity. The same rule which is applicable to other courts of law, will no doubt apply to this. If it be wholly incompetent to give relief, and the party has not, by his own laches, lost his remedy, then it might be a proper case for equity jurisdiction; but if the remedy can be had under the appropriate powers of the probate court, it should there be pursued;

[Carmichael *et al.*, Appellants, *v.* Browder.]

and the incompetency of the court to give relief, must not arise from the neglect of the party who seeks it in equity.

The defendant, Carmichael, has answered the bill, so far as discovery is prayed, and as the allegations charging him with the receipt of the property and the proceeds of the crops, but demurs to the relief sought, and for want of jurisdiction, so that the question of jurisdiction is fairly presented. The cause being set down for hearing, on bill, answer, and exhibits, the answer is to be taken as true, and if the case made out was not a proper one for the jurisdiction of the court of chancery, the decree must be reversed.

The first allegation is, that the defendant, Carmichael, as administrator *de bonis non*, received the slaves and other property held by the first administrator, which had belonged to the mother of complainant, and returned an inventory of appraisement, amounting to 63,066 dollars, and that, either as administrator or guardian to the other children of Mrs. Hooke, he also had possession of the Woodstock plantation, and another tract of land adjoining the Salsbury plantation. That he has continued to cultivate the Woodstock plantation, and receive the cotton crops since 1831, and has failed to account. Another allegation is, that of all the property, real and personal, as well as profits, in the hands of Carmichael or the other defendants, the complainant is co-heir with the other children of Mrs. Hooke, and there is an averment, that, as such co-heir, the complainant has requested Carmichael to set apart to her, her distributive share of the estate, which he has refused. This is the entire substance of the bill. Admitting that it was all proved, would it present a proper case for the interposition of a court of equity?

It seems, that Carmichael returned an inventory as the law required of him, and no objection is taken to it. We must, therefore, presume that it was a true one, of all that came to his hands. No act of mal-administration is mentioned in regard to the property received by him, except that he has received the crops raised on the Woodstock plantation, and has not accounted for them, and it is somewhat singular that this should be considered so gross a breach of duty, when it is left altogether doubtful from

[Carmichael *et al.*, Appellants, *v.* Browder.]

the bill whether he was bound to account for them.  He is charged with holding the plantation, either as administrator, or as guardian to the other children of Mrs. Hooke.  If he held it as guardian, he certainly was not bound to account as administrator; his accountability was to different persons, and in a different character.  The answer denies the refusal to account, but states that he has accounted with the probate court for all the crops except the last.  Even if he had not, we think the probate court has abundant power to coerce such account.  The profits of the plantation were either assets, or they were not.  If they were assets, the probate court had full power by the 95th section of the orphans' court law, to compel him to account for them.  For this purpose, its powers are co-extensive with those of any other court.  If they were not assets, his accountability was either as tenant or trespasser to the heir, and the remedy was at law.  Being, however, the product of the labor of the slaves, they may with propriety, be considered assets, and if so, there can be no doubt about the power of the probate court to make him account for them.  Besides the power of the court, an additional remedy is given on the bond.

The only remaining charge against the administrator, is, that he has refused to make distribution.  In this, too, the probate court is clothed with the requisite authority, by the 91st section of the same act.  Even if this section only applies to personal property, there is still another remedy as to real property.  The complainant does not show in strictness, that she is entitled to distribution.  The administrator is not bound to make it, until bond to refund be tendered, and there is no averment that the bond was tendered.  It has been decided by this court, that an administrator does not commit a breach of his bond by refusing to make distribution, unless the requisite bond to refund be tendered.  In regard to her right to partition of the real estate, the remedy is clearly pointed out in the 38th chapter of the Revised Code.  If partition be made according to this act, by the order of any of the judges or chancellor, it may be reversed by bill in equity, but this is rather an appellate or secondary jurisdiction, than original, and the general rule would apply, that equity will not interfere when there is a legal remedy.  There is no

22*

peculiarity in this case, even according to the complainant's own showing, to relieve it from the application of this rule. We do not deem it necessary to determine the plaintiff's right to the land; let the extent of the interest be what it may, it is not the less the subject of her remedy above mentioned. We are satisfied that there is no showing in this bill which should entitle it to the favorable consideration of a court of equity—no allegation of injury, for which there is not an ample and speedy remedy in other and appropriate tribunals. The facts stated, are of every day's occurrence, and if this bill could be entertained, there are few cases of administration which might not, with equal propriety, be settled by the court of chancery—in fact, it seeks nothing but to compel an account and distribution, two of the prominent duties of an administrator, in his defined course of administration, under the immediate superintendence of the probate court. As it may, in some degree, tend to prevent future useless litigation, we deem it proper to remark, that there are but few, if any, cases of administration, in which the powers of the probate court are not altogether adequate to the necessary relief. Indeed, its powers may be said to be co-extensive with those of a court of equity, for if necessary parties may proceed by bill and answer, and the court may decree as the justice of the case may require. In matters of account, it possesses equal powers, which can be more speedily exercised, and with far less expense. We would, therefore, admonish all who are interested in estates, that the progress to final settlement should be watched with diligence through the probate court.

This bill is evidently bad for multifariousness, as demanding several matters of distinct natures. The claim of an heir to the realty, and that of a distributee to the personalty are different. The heirs of Mrs. Hooke had nothing to do with the distributive share of the complainant in the personal estate; that was in possession of the administrator, and must be claimed of him. Nor had the administrator any thing to do with the real estate; the co-heirs were accountable for that. Mitf. Plead. 181.

The decree of the chancellor must be reversed, the demurrer sustained, and the bill dismissed.